CITED in *State, ex rel. Ricardo,* v. *Common Pleas of Passaic,* 9 *Vroom* 183.

---

THE STATE, JOHN HOWETH ET AL., PROSECUTORS, AND THE MAYOR AND COMMON COUNCIL OF JERSEY CITY.

Under the charter of Jersey City, only such resolutions and ordinances of the common council as are in their nature final need be presented to the mayor for approval; when a final ordinance provides for a different improvement from that asked for in the petition presented to the council, and specified in the public notice given according to the charter, it will be set aside and held void as against the prosecutors.

---

The *certiorari* was brought to set aside an assessment made by the common council of Jersey City for paving and otherwise improving Bright street.

The principal reasons urged are—*first,* that the resolution of council appointing a time for hearing objections to the improvement had not been presented to the mayor for his

approval; and *second*, that the ordinance of council was variant from the petition and notice required by the charter, and therefore unlawful and void.

For the prosecutors, *J. Flemming.*

For the defendant, *R. D. McClelland.*

The opinion of the court was delivered by

VREDENBURGH, J. The first reason assigned for setting aside this assessment is, that the resolution appointing a time for the hearing of objections to the improvement of Bright street was not presented to the mayor for his approval. But it is apparent that this is not one of those kind of ordinances or resolutions intended by the charter to be presented to the mayor. It is only the final resolution ordering the improvement to be made that could be so intended.

The language of the charter, *Pamphlet Laws of* 1851, page 402, § 26, is, every ordinance or resolution, before it goes into effect, shall be presented to the mayor. These intermediate proceedings cannot be said to go into effect. It is only the final law, as passed, that can be said to go into effect.

It might as well be said that each intermediate step of the legislature in passing a law shall be presented to the governor for his approval or veto. This is further manifested by the provision, in the same section, that if the ordinance, after its veto is passed by two-thirds of the council it shall take effect as a law, and if not returned by the mayor, it shall become a law.

The next reason for reversal is because the ordinance provides for a different improvement from that asked for in the petition and specified in the notice. The petition was to grade, pave, gutter, and flag Bright street, from Grove to Jersey street, where not already done. Bright street had been opened and used as a street sixty feet wide some years

before this application. Buildings had been put up on the south side as if it were only a sixty feet street; the owners had bought and sold upon that assumption. It was practically but a sixty feet street.

The petition to pave Grove street was presented to the council on the 21st June, 1859. The advertisement required by the charter was to the same purpose. The original ordinance, as reported to the council, was to the same effect. The hearing was had on the 30th July, 1859, and the improvement recommended by committee of council.

On the 20th September, 1859, the ordinance was taken up and rejected, but afterwards, at the same meeting, again taken up and reconsidered, and laid upon the table.

At an adjourned meeting, on the 27th September, 1859, the original ordinance was altered by inserting, after the words Bright street, where they occur, the words " at lawful width of eighty feet," so as to read, an ordinance for filling in Bright street at the lawful width of eighty feet, and passed; and this assessment is made for paving Bright street at the width of eighty feet. Now neither the return to the *certiorari* nor the proof shows that Bright street was eighty feet wide, but the proof is direct and positive that it was only sixty feet wide.

These facts are clearly fatal to this assessment. In the first place, it was taking this twenty feet from the prosecutors without compensation; and in the second place, having taken it for nothing, the city forces the owner to pay for its improvement for the city's use. In the next place, it was not the improvement advertised. In the next place, this alteration was made after the parties interested had been heard upon the original application, and without any opportunity of being heard before the council. In the next place, the proceedings ought to have been to alter and widen as well as to pave, so that the width of the land taken could have been assessed. If this proceeding could be justified, the city authorities, under a proceeding to pave a street with houses built up on both sides, could simply, by calling a street one hundred feet wide, instead of sixty, its actual width,

without notice, or rather under a false notice, and without paying a cent to the owners, level the whole street even with the ground, and make its owners pay for their own ruin.

I presume this action of the city authorities has been induced by the result of the suit of *Holmes* v. *Jersey City*, 1 *Beasley* 301. But that case only decided that, as between Jersey City and Mr. Holmes, the city could not set up that it was a street only sixty feet wide; but it did not decide that, as between the city and these prosecutors, it was a street eighty feet wide. The Court of Appeals, in that case, did not decide that the street was a street eighty feet wide, but only that the city could not set up that the action of the surveyors of highways did make it a sixty feet street: they only decided that it was not a street either eighty or sixty feet wide, and therefore the authorities of Jersey City showed no right to intermeddle with it. Van Vorst, in 1835, had dedicated the street as an eighty feet street, but it was only upon paper. It had never been accepted by the township, and, being thus only a paper road, the authorities of Jersey City had surveyors appointed to alter it to a sixty feet street, and the Court of Appeals said the surveyors of the highways could not alter what had never existed, and so they restrained the city from proceeding with the action of the surveyors of the highways as valid, and left Mr. Holmes to his private rights as a lot owner, binding upon land dedicated to the purposes of a street. But this part of Bright street had been actually opened and recorded by the city, and paved and built upon, and was *de facto* a street sixty feet wide years before this application to pave, and they had no authority to widen it then without taking proceedings to alter it from a sixty to an eighty feet street, and do so by merely declaring that its rightful width was eighty feet. This view of the case makes it unnecessary to look into the other reasons urged. This assessment, as regards the prosecutors, must be set aside, as founded upon an ordinance void as against them.

Assessment set aside.

CITED in *Haight* v. *Love*, 10 *Vroom* 20.